IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JULIE DOWNS, as Administrator of the Estate of BRIAN DOWNS, and on behalf of his Next of Kin, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. |
| COUNTY OF MORGAN, MIKE CARMODY, Morgan County Sheriff, TIM MEGGINSON, Morgan County Jail Administrator, TREVOR PRATHER, Morgan County Assistant Jail Administrator, KURT BORMAN, COLTON BROWN, DYLAN BUNFILL, K.W. CREWS, J. GILL, L. HART, IAN HAYES, ADAM HILLIS, AUSTEN MANLEY, and CLAYTON SEXTON, Morgan County Corrections Officers, | ) ) ) ) ) ) ) ) ) ) | **JURY DEMANDED** |
| ADVANCED CORRECTIONAL HEALTHCARE, INC., JESSICA YOUNG, CEO and as President of Advanced Correctional Healthcare, Inc., and KAREN FOWLER, R.N., as Health Services Administrator of Advanced Correctional Healthcare, Inc., MARY DAMBACHER, NP, and DAWN R. GRAHAM, RN, | ) ) ) ) ) ) ) ) | |
| THE PASSAVANT MEMORIAL AREA HOSPITAL ASSOCIATION, d/b/a JACKSONVILLE MEMORIAL HOSPITAL, HELEN D. KWONG, M.D. | ) ) ) ) | |
| Defendants. | ) | |

<u>**PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>
<u>**PURSUANT TO FED. R. CIV. P. 15(2)**</u>

## I.    PRELIMINARY STATEMENT

On Friday, April 22, 2022, Brian Downs (Brian) and his girlfriend were at JB Hawks

located at 205 East Morton, Jacksonville, Illinois.   The manager of the business called

the Jacksonville Police Department due to Brian allegedly leaving a syringe in the restroom.   Upon arrival, Jacksonville Police Department Officers Schriber and Radliff immediately recognized Brian from his history of illegal drug use.   Brian was placed under arrest for Resisting or Obstructing a Peace Officer.   Brian was then transported to the Morgan County Detention Facility (MCDF) by Officer Radliff.   Upon arrival at the jail, Brian's behavior was erratic and he was disoriented. The officers recognized that Brian was having severe heroin withdrawals and notified Registered Nurse Dawn R. Graham, to examine him.   RN Graham is the Clinical Director of the Morgan County TB Clinic, and also worked at the jail.   Upon her examination, RN Graham telephoned Nurse Practitioner, Mary Dambacher, an employee of Advanced Correctional Healthcare (ACH), who told her to have Brian transported to the emergency department at Jacksonville Memorial Hospital (JMH) for an evaluation.   Correctional officers followed the advice of medical professionals and transported Brian to JMH.

At the hospital, Brian's blood test revealed the presence of heroin.   Brian was treated with Atavin.   At approximately 7:32 p.m. Brian was discharged per the order of correctional officers, despite the fact that this was against medical advice.   The correctional officers were specifically instructed in the discharge instructions by the medical professionals to "Return to the ED if [Brian's] "symptoms become worse, has increased confusion, or persistent vomiting."   Upon return to the jail, Brian was placed in a medical holding cell which was equipped with a video camera so staff could purportedly maintain a close watch on the medically vulnerable inmate.

On Saturday, April 23, 2022, at approximately 2:20 p.m.[1], and possibly earlier, Brian's medical condition began to worsen; he began vomiting.   Brian continued to vomit throughout the day and following day.   Over the course of 34 hours, Brian vomited, including blood.   During this time period, no employee of the jail notified a qualified health provider, nor did they transport Brian to the emergency department at JMH.

On April 24, 2022, at approximately 12:24 p.m. the nurse of MCDF, RN Graham, was doing paperwork when Correction Officer Bunfill explained to her that Brian was vomiting and asked if she could go see him.   Upon examination, RN Graham, noted that Brian was having "emesis" and it had a color of yellow and green.   She then phoned NP Dambacher and explained Brian's medical condition.   NP Dambacher ordered Zofran 4 mg, to be taken 2x per day/orally for 3 days, Vistaril 50 mg, to be taken 2x per day/orally for 5 days, Vistaril 25 mg, to be taken 2x per day/orally for 5 days, and Bentyl 20 mg, to be taken 2x per day/orally for 5 days.   At approximately 1:05 p.m., RN Graham gave Brian Bentyl 20 mg, and Vistaril 50 mg with a glass of water.   At approximately 1:10 p.m., she gave him Zofran 4 mg. That was her last contact with Brian throughout his incarceration.   RN Graham did dispense the initial medication to Brian, but records do not reflect that Brian received any further medication.

Upon shift change at 3:00 p.m., arriving CO Manley indicated:

…that detainee Downs, Brian C DOB 11/16/1981 had been seen by our facility nurse earlier in the day due to him actively withdrawing (sic).   They also informed us that our facility nurse had given him medication and cleared him from needing any further medical attention.

---

[1] The Illinois State Police conducted an investigation into this matter, which included a review of video tape capturing Brian's incarceration.   It is believed that the time stamp on the video is two hours behind the actual time. The dates and times of this complaint reflect the actual estimated time of the occurrence depicted.

At the arrival of the 11:00 p.m. shift, CO Gill (working the 3:00 p.m. to 11:00 p.m.) shift, instructed CO Borman (who was just arriving):

> …that Downs had been seen by MCSO medical staff earlier in the day and was given meds for his condition.   No further actions were to be taken by staff for his medical.   Downs was given a bucket in his cell as he was vomiting throughout the day.

Being so instructed, CO Borman and all other correctional officers did nothing to assist Brian despite his medical emergency.

Deputy T. Griffin, from the Morgan County Sheriff's Department, arrived at the jail at 12:15 a.m. and observed Brian's condition.   He was alarmed and inquired as to why Brian was not receiving medical care.   The jail staff informed him that they could not get an off-duty correctional officer to come to the jail to transport Brian to the hospital. Deputy Griffin expressed alarm at this excuse and immediately drove his patrol car to the sally port in order to transport Brian to JMH.   On April 25, 2022, - three days after his initial admission to the MCDF and approximately 52 hours after being locked in the medical holding cell – Brian collapsed and went into cardiac arrest.   Brian died at the jail and his body was then transported to JMH.     Brian's autopsy determined that he died of dehydration as well as septic shock due to bowel obstruction as a consequence of small bowel intussusception in the setting of opioid withdrawal syndrome.

## II.      JURISDICTION & VENUE

1.      The jurisdiction of the Court is invoked pursuant to the Constitution of the United States; the Civil Rights Act, 42 U.S.C. §1983; the Judicial Code, 28 U.S.C. §§ 1331, 1343(a), and supplementary jurisdiction, as codified in 28 U.S.C. §1367(a).

2.      The violations of civil rights and other misconduct alleged herein occurred

in Jacksonville, Morgan County, Illinois.    Accordingly, this action properly lies in the United States District Court for the Central District of Illinois, Springfield Division, pursuant to 28 U.S.C. § 1391(b).

## III.    THE PARTIES

3.    All relevant times, Brian Downs was a United States citizen and lived in Jacksonville, Morgan County, Illinois.   At the time of his death, Brian Downs was a pre-trial detainee confined in the MCDF.   Brian was 40 years old, never married, had no children, and is survived by his mother, Julie Downs, brother, Brandon Downs, and sister, Brittany Downs.

4.    Plaintiff, Julie Downs, is the mother of the decedent, Brian Downs, and was appointed Administrator of the of the Estate of Brian Downs by the Circuit Court of the Seventh Judicial Circuit in Morgan County Case No. 2023-PR-4.   Plaintiff brings this action in her capacity as Administrator of the Estate of Brian Downs and for the benefit of Brian's next of kin.

### A.    Morgan County, Sheriff, Staff, and Jailers
### (The Morgan County Corrections Defendants)

5.    At all relevant times, Defendant Mike Carmody (Sheriff Carmody) was the duly elected Sheriff of Morgan County and the warden and chief administrator of the MCDF.   Sheriff Carmody was the final policy maker for Defendant Morgan County with respect to the care and custody of inmates in the MCDF.   At all relevant times, Sheriff Carmody acted under color of law.   Sheriff Carmody is sued in his official capacity.

6.    Defendant Jail Administrator Tim Megginson was employed by Morgan County and/or Sheriff Carmody as the Jail Administrator during Brian's incarceration.   JA

Tim Megginson is sued in his individual capacity.

7.     Defendant Assistant Jail Administrator Trevor Prather was employed by Morgan County and/or Sheriff Carmody as the Assistant Jail Administrator during Brian's incarceration.   Assistant JA Trevor Prather is sued in his individual capacity.

8.     Defendant Kurt Borman (CO Borman) was employed by Morgan County and/or Sheriff Carmody as a Corrections Officer working in the MCDF during Brian's incarceration, including on the night he died. CO Borman is sued in his individual capacity.

9.     Defendant Colton Brown (CO Brown) was employed by Morgan County and/or Sheriff Carmody as a Corrections Officer working in the MCDF during Brian's incarceration, including on the night he died.   CO Brown is sued in his individual capacity.

10.     Defendant Dylan Bunfill (CO Bunfill) was employed by Morgan County and/or Sheriff Carmody as a Corrections Officer working in the MCDF during Brian's incarceration.   CO Bunfill is sued in his individual capacity.

11.     Defendant Clayton Sexton (CO Sexton) was employed by Morgan County and/or Sheriff Carmody as a Corrections Officer working in the MCDF during Brian's incarceration, including on the night he died.   CO Sexton is sued in his individual capacity.

12.     Defendant K.W. Crews (CO Crews) was employed by Morgan County and/or Sheriff Carmody as a Corrections Officer working in the MCDF during Brian's incarceration.   CO Crews is sued in his individual capacity.

13.     Defendant J. Gill (CO Gill) was employed by Morgan County and/or Sheriff Carmody as a Corrections Officer working in the MCDF during Brian's incarceration.   CO

Gill is sued in his individual capacity.

14.     Defendant L. Hart (CO Hart) was employed by Morgan County and/or Sheriff Carmody as a Corrections Officer working in the MCDF during Brian's incarceration.   CO Hart is sued in his individual capacity.

15.     Defendant Ian Hayes (CO Hayes) was employed by Morgan County and/or Sheriff Carmody as a Corrections Officer working in the MCDF during Brian's incarceration.   CO Hayes is sued in his individual capacity.

16.     Defendant Adam Hillis (CO Hillis) was employed by Morgan County and/or Sheriff Carmody as a Corrections Officer working in the MCDF during Brian's incarceration.   CO Hillis is sued in his individual capacity.

17.     Defendant Austen Manley (CO Manley) was employed by Morgan County and/or Sheriff Carmody as a Corrections Officer working in the MCDF during Brian's incarceration.   CO Manley is sued in his individual capacity.

18.     At all relevant times, the individual jailer defendants identified above acted under color of law and in the course and scope of his or her employment as employees or agents of Morgan County and/or Sheriff Carmody.

19.     Defendant Morgan County is a governmental entity in the State of Illinois which funds and operates the MCDF and, while Sheriff Carmody may be the actual employer of the individual jailers named herein, Morgan County is a necessary party and is ultimately responsible for paying a judgment or settlement on behalf of the Sheriff or individual jailers and is joined in this action pursuant to *Carver v. Sheriff of LaSalle County,* 324 F.3d 947 (7th Cir. 2003).

**B.    Dawn R. Graham, employed by Morgan County TB Clinic, Nurse (Morgan County Detention Facility – Medical Defendant)**

20.    At all relevant times, Defendant, Dawn R. Graham, Registered Nurse, (RN Graham) was employed by Morgan County and/or Sheriff Carmody in the business of providing healthcare services to inmates incarcerated at the MCDF.  RN Graham was acting under color of law and in the course and scope of her employment with Morgan County and/or Sheriff Carmody.   RN Graham is sued in her individual capacity.

**C.    Advanced Correctional Healthcare, Inc., Physicians and Nurses (Advanced Correctional Healthcare - Medical Defendant)**

21.    At all relevant times, Defendant Advanced Correctional Healthcare, Inc. (ACH) was a corporation located in Franklin, Tennessee, in the business of providing healthcare services to incarcerated inmates.  At all relevant times, ACH provided healthcare to inmates in the MCDF pursuant to a contract with Morgan County and Sheriff Carmody.   At all relevant times, ACH, by and through its employees and agents, was acting under color of law, and its employees and agents were acting in the course and scope of their employment or agency with ACH and/or Morgan County and/or Sheriff Carmody.

22.    At all relevant times, Defendant Jessica Young (CEO & President Young) at Advanced Correctional Healthcare, Inc., was the Chief Executive Officer and President and was responsible for medical healthcare services at MCDF, including providing adequate physician, nurse practitioner or physician assistant staffing.   CEO & President Young was an official policy maker of ACH and Morgan County and/or Sheriff Carmody on all issues relating to the medical healthcare provided to inmates in MCDF.  CEO &

President Young was acting under color of law and in the course and scope of her employment or agency with ACH and Morgan County and/or Sheriff Carmody. CEO & President Young is sued in her official and individual capacities.

23.    At all relevant times, Defendant Karen Fowler (HSA Fowler) was employed by ACH as its Health Services Administrator and Registered Nurse and was responsible for providing medical care to inmates of MCDF.   HSA Fowler was an official policy maker of ACH and/or Morgan County and/or Sheriff Carmody on all issues relating to providing medical care to inmates of MCDF.   HSA Fowler was acting under the color of law and in the course and scope of her employment or agency with ACH and/or Morgan County and/or Sheriff Carmody.   HAS Fowler is sued in her official capacity.

24.    At all relevant times, Defendant Nurse Practitioner Mary Dambacher was employed by ACH as a Nurse Practitioner and was responsible for providing healthcare services to inmates at MCDF.   NP Dambacher was acting under color of law and in the course and scope of her employment or agency with ACH and/or Morgan County and/or Sheriff Carmody.   NP Dambacher is sued in her individual capacity.

**D.    The Passavant Memorial Area Hospital Association, d/b/a Jacksonville Memorial Hospital and Helen D. Kwong, M.D.**
**(Jacksonville Memorial Hospital and Helen D. Kwong, M.D. – Medical Defendants)**

25.    At all relevant times, Defendant Jacksonville Memorial Hospital (JMH) was a corporation located in Jacksonville, Illinois, in the business of providing healthcare services to patients.   At all relevant times, JMH, by and through its employees and agents were acting in the course and scope of their employment or agency with JMH.

26.    At all relevant times, Defendant Helen D. Kwong, M.D., (Kwong) was

employed by JMH as a physician and was responsible for providing medical care to patients.   Helen D. Kwong, M.D. was acting in the course and scope of her employment or agency with JMH.

### IV.    COMMON ALLEGATIONS OF FACT

### A.    Advanced Correctional Healthcare, Inc. Is Awarded the "Jail Contract" to Provide Medical Care for MCDF Inmates.

27.    On February 1, 2022, Morgan County, the Morgan County Sheriff and Advanced Correctional Healthcare, Inc. (ACH) executed an "Agreement for the Provision of Healthcare to Incarcerated Patients Morgan County, Illinois". (the Jail Contract).

28.    The Jail Contract required ACH to provide medical care to MCDF inmates.

29.    The Jail Contract required Morgan County to pay ACH a fixed sum of $53,040.06 per year.

30.    In the years and months before Brian's April 2022 admission to the MCDF, the abuse of heroin and other opiate-based controlled substances increased dramatically throughout the nation, including Morgan County and surrounding areas.

31.    Reasonably trained corrections staff and medical staff responsible for coordinating access to and providing medical care to inmates housed in local jails were particularly attuned to patterns of heroin and opiate abuse due to the disproportionately high number of heroin and opiate abusers typically present in the correctional population.

32.    Reasonably trained corrections staff and medical staff responsible for coordinating access to and providing medical care to inmates housed in local jails were, likewise, aware of the significant medical issues presented in opiate addicted individuals detoxifying from opiates due to sudden termination of their usage upon admission to a

correctional facility.

33.     Inmates undergoing opioid detoxification have serious medical needs.

34.     Opioid detoxification is known to have several harmful and potentially fatal medical consequences, which are particularly likely to be present in persons who are heavy users of opioids.

35.     In the initial phase of opiate detoxification, a patient may experience the following unpleasant withdrawal symptoms: restlessness; agitation; anxiety; myalgia (muscle aches/pains); insomnia; and diaphoresis (sweating).

36.     In the later phase of opiate detoxification, a patient may experience the following more menacing withdrawal symptoms: abdominal cramping; diarrhea; mydriasis (dilated pupils); horripilation (goose bumps); nausea; and vomiting.

37.     The serious medical consequences present with opioid detoxification include: dehydration; electrolyte imbalance; neurological arrhythmia (seizures); or cardiac arrhythmias leading to cardiac arrest.   The most serious medical consequence from opioid detoxification is death.

38.     For these reasons, recognized standards of correctional healthcare require that persons who are admitted to correctional facilities with obvious signs of opiate abuse be consistently monitored and assessed.

39.     Such monitoring includes assessments multiple times per day of vital signs, including: pulse; respirations; blood pressure; and body temperature.

40.     Such monitoring includes evaluation multiple times per day of symptoms which are consistent with serious health consequences of detoxification, including:

abdominal cramping; diarrhea; mydriasis (dilated pupils); horripilation (goose bumps); nausea; vomiting; anxiety; insomnia; sweating; and restlessness.

41.    Close monitoring, regular assessments and continued evaluations of this nature is necessary to ensure that an inmate experiencing opioid detoxification is not at risk of more serious medical consequences, including those outlined above.

42.    Most opioid withdrawal protocols consist of the following measures:

a.    daily clinic visits by a healthcare provider during the withdrawal period for vital sign assessments, clinical assessments and interviews to assess a patient's withdrawal severity utilizing the Clinical Opiate Withdrawal Scale (COWS), an objective assessment completed by a healthcare provider and the Subjective Opiate Withdrawal Scale (SOWS);

b.    pharmacological intervention and support measures to assess, monitor and treat the patient's unpleasant and menacing symptoms of detoxification, including anxiety, insomnia, restlessness, agitation, nausea, vomiting, rhinorrhea, or myalgias.

c.    to provide non-pharmacological intervention for signs of dehydration resulting from diarrhea, vomiting and malnutrition; monitoring potential electrolyte imbalances and kidney function with chemical tests on a patient's blood sample; providing supplemental nourishment such as Ensure; and to provide intravenous fluids such as saline to maintain safe levels of hydration.

43.    Morgan County, as an entity that operates a correctional facility and is charged with the responsibility to provide medical care to an inmate population, was

aware of the medical issues present in an inmate population and was thus aware of the need for monitoring, assessment and evaluation of persons admitted the correctional facilities with histories of opioid abuse.

44.    Morgan County was aware of the need to establish and follow specific policies, practices, and guidelines for its corrections staff and its medical contractors regarding care for inmates with histories of opiate abuse.

45.    Morgan County was, likewise, aware of the need to supervise, train and discipline its corrections staff and its medical contractors concerning compliance with established policies, practices and guidelines for its corrections staff and medical contractors, including those policies, practices and guidelines regarding care for inmates with histories of opiate abuse.

46.    The individual Morgan County Corrections Defendants and the individual ACH Defendants were each aware of the need to properly monitor, assess and evaluate persons admitted to MCDF with histories of opioid abuse and the need to provide necessary medical intervention in the event of complications arising from opioid detoxification.

**B.    Brian Was Admitted to MCDF and Corrections and Medical Staff Understood that He Was Experiencing Withdrawal Symptoms from Opiate Use.**

47.    On April 22, 2022, Brian was arrested by the Jacksonville Police Department at a local establishment for discarding a used syringe and displaying signs of intoxication.  Brian was arrested for Resisting or Obstructing a Peace Officer and transported to the MCDF.   It was disclosed to corrections and medical that he suffered

from opiod use disorder (OUD) and had previously experienced withdrawal symptoms while detoxifying.

48    On April 22, 2022, at approximately 2:20 p.m., CO Hart, CO Jackson, and Tim Megginson (JA Megginson) were working at the MCDF.   CO Hart conducted a search of Brian and discovered a small piece of paper with a rock-like substance.   Brian was then escorted to a holding cell to await charges from the Jacksonville Police Department.

49.    On April 22, 2022, at approximately 3:00 p.m., RN Graham was asked by an unnamed correctional officer to check on an inmate (Brian) because he had "injected something and had either passed out or something happened."   RN Graham is the clinical director of Tuberculosis (TB) Clinic for Morgan County and provided healthcare services at MCDF.

50.    Upon examination, RN Graham indicated that Brian told her that he had injected heroin (2-3 hours ago) and was complaining about muscle spasms and irritability.

51.    On April 22, 2022, at approximately 3:05 p.m., RN Graham contacted NP Dambacher by telephone and was instructed to send Brian to the Emergency Room for evaluation.   RN Graham notified the jail administration of the orders.

52.    On April 22, 2022, at approximately 4:20 p.m., CO Crews transported Brian to Jacksonville Memorial Hospital, stated that he secured Brian to the hospital bed with 2-point restraints, and that Brian was in a very excited state of mind and was sweating profusely.

53.    Brian was treated by Dr. Helen D. Kwong at JMH with Atavin.   Against

medical advice, MCDF employees took custody of Brian and transported him back to MCDF at approximately 8:00 p.m. Staff at JMH instructed via written discharge instructions that Brian was to be immediately transported back to the hospital if his symptoms "become worse, have increased confusion or persistent vomiting."

54.    On April 23, 2022, at approximately 2:26 p.m. CO Hayes and Jail Administrator Prather escorted Brian into the booking room to complete the booking process.   Brian then asked, "is there any way we can do this a little bit later, I just want to lay down."   They escorted Brian back to Holding Cell #2.   A few moments later, Brian knocked on the door and CO Hayes went to see what Brian needed.   CO Hayes indicated that Brian did not speak but looked as if he were going to vomit.   CO Hayes quickly unlocked the door and escorted Brian back into booking so he could vomit in the trash can.   It appears that this was the first documented time Brian vomited during his incarceration.

55.    On April 23, 2022, Brian continued to vomit and/or spit what appears to be liquid which is yellowish in color from 10:30 p.m. until 12:00 a.m. for a total of 2 times.

56.    On April 24, 2022, Brian continued to vomit and/or spit what appears to be liquid which is yellowish in color from 12:00 a.m. until approximately 4:00 a.m., for a total of 11 times.

57.    On April 24, 2022, Brian continued to vomit and/or spit, what now appears to be blood, from approximately 4:00 a.m. to approximately 7:48 a.m., for a total of 16 times.

58.    At approximately 4:53 a.m., two jailers came to Brian's cell and mopped the

blood on the floor.

59.    On April 24, 2022, Brian continued to vomit blood and/or spit from 7:48 a.m. until approximately 12:24 p.m., for a total of 17 times.

60.    At approximately 12:24 p.m. a correctional officer and Jail Trustee Joshua Wilson again mopped the blood off of the cell floor.

61.    Also, at approximately 12:24 p.m. RN Graham arrived and does an assessment of Brian.   She exited the cell for a few minutes and returned to take his blood pressure.   RN Graham then exited Brian's cell.

62.    After her examination, RN Graham phoned NP Dambacher and explained Brian's medical condition.

63.    NP Dambacher ordered Zofran 4 mg, to be taken 2x per day/orally for 3 days, Vistaril 50 mg, to be taken 2x per day/orally for 5 days, Vistaril 25 mg, to be taken 2x per day/orally for 5 days, and Bentyl 20 mg, to be taken 2x per day/orally for 5 days.

64.    At approximately 1:05 p.m., RN Graham returned to Brian's cell and gave Brian Bentyl and Vistaril with a glass of water.

65.    At approximately 1:10 p.m., RN then gave Brian Zofran. That was her last contact with Brian throughout his incarceration.

66.    On April 24, 2022, Brian continued to vomit and/or spit blood from approximately 12:35 p.m. until 7:35 p.m. for a total of 48 times.

67.    On April 24, 2022, CO Manley arrived at the MCDF for his 3:00 p.m. to 11:00 p.m. shift and was advised from the prior shift (7:00 a.m. to 3:00 p.m.):

….that detainee Downs, Brian C DOB 11/16/1981 had been seen by our facility nurse earlier in the day due to him actively withdrawing.   They also

Page  16  of  54

informed us that our facility nurse had given him medication and cleared him from needing any further medical attention.

68.    On April 24, 2022, CO Borman arrived at the MCDF for his 11:00 p.m. to 7:00 a.m. shift.   He relieved CO Gill in the control room and was verbally briefed:

…that Downs had been seen by MCSO medical staff earlier in the day and was given meds for his condition.   No further actions were to be taken by staff for his medical.   Downs was given a bucket in his cell as he was vomiting throughout the day.

69.    On April 24, 2022, at approximately 7:35 p.m. a correctional officer opened the door and Brian exited the cell.   Another correctional officer entered the cell holding his nose.   Trustee Wilson looked in the cell and left to retrieve a mop and bucket and began mopping blood from the cell.   Trustee Wilson then removed the garbage bag from the trash can (which appeared to be heavy), and continued to mop the blood from the floor; he sprayed the cell with Lysol.

70.    Brian then returned to the cell appearing to have showered.

71.    On April 24, 2022, Brian began to vomit and/or spit from approximately 8:00 p.m. until 10:40 p.m. for a total of 32 times.

72.    On April 25, 2022, at approximately 12:05 a.m.[2]    Brian is seen being escorted to the MCDF booking area by a corrections officer.

73.    On April 25, 2022, at approximately 12:07 a.m., Brian collapses and falls down.   Two corrections officers assist in getting him up.

74.    On April 25, 2022, at approximately 12:08 a.m., Brian collapses again and

---

2 The time stamp on the booking room video appear to be 1 hour behind the actual time.   The dates and times of this complaint reflect the actual estimated time of the occurrence. Paragraphs 64-89 describe in present tense the events as depicted in the video.

the two corrections officers place him on the floor; one corrections officer leaves to retrieve the wheelchair.   As they are placing Brian in the wheelchair, he falls again.

75.    One of corrections officer exits the view of the camera.   The other corrections officer is standing at the end of the counter, doing nothing.   Brian remains slouched in a wheelchair and is experiencing labored breathing.

76.    On April 25, 2022, at approximately 12:10 a.m., the corrections officer standing at the end of the counter then exits the view of the camera.

77.    On April 25, 2022, at approximately 12:12 a.m. a corrections officer walks over, appears to check on Brian, and then is out of view of the camera.   The other corrections officer returns to the end of the counter and watches Brian as he remains slouched in the wheelchair and experiencing labored breathing.

78.    On April 25, 2022, at approximately 12:14 a.m. the corrections officer that was leaning against the counter exits the view of the camera.   Brian remains slouched in a wheelchair and is experiencing labored breathing.

79.     On April 25, 2022, at approximately 12:17 a.m., Deputy Griffin, from the Morgan County Sheriff's Department, enters the booking room and approaches Brian, grabs a garbage can, and stands next to Brian.

80.     On April 25, 2022, at approximately 12:18 a.m., the corrections officer returns to the end of the counter, and Deputy Griffin exits the view of the camera.

81.    On April 25, 2022, at approximately 12:19 a.m., a corrections officer exits the view of the camera and returns in a few short seconds.   Deputy Griffin returns and moves the garbage can to the side of Brian. Brian raises his head.   Deputy Griffin goes

behind the wheelchair and looks under the wheelchair. Another corrections officer arrives and goes behind the wheelchair, looks under the wheelchair, and turns on a flashlight.

82.     On April 25, 2022, at approximately 12:21 a.m., Brian sits up in the wheelchair and Deputy Griffin washes his hands.

83.     On April 25, 2022, at approximately 12:22 a.m., Brian takes his shirt off and is leaning with his elbows on his knees.   One of the corrections officer and Deputy Griffin exit the view of the camera.   The other corrections officer remains leaning up against the counter.

84.     On April 25, 2022, at approximately 12:23 a.m., Deputy Griffin gives Brian a glass of water.   Brian pours the water over his head, and then takes a drink.   He sits back in the wheelchair and is wiping the water from his head; he continues to drink from the glass.

85.     On April 25, 2022, at approximately 12:24 a.m., Brian sits up and places his elbows on his knees; he takes another drink.

86.     On April 25, 2022, at approximately 12:25 a.m., Deputy Griffin exits the view of the camera; a few seconds later, the corrections officer exits the view of the camera.

87.     At that same time, Brian stands up, pulls his pants down, and sits back down in the wheelchair.   Two corrections officers come in view of the camera. The two corrections officers get Brian out of the wheelchair, Brian puts his pants back on, and Brian puts his head down on the counter.   The two correctional officers escort Brian down the hall and out of view of the camera.

88.     On April 25, 2022, at approximately 12:27 a.m., one corrections officer

returns to the booking room and goes behind the counter as if he were looking for something.   He returns down the hallway and helps another corrections officer escort Brian back to the wheelchair.

89.     On April 25, 2022, at approximately 12:29 a.m., one corrections officer exits the view of the camera and one remains at the end of the counter.   Brian is sitting in the wheelchair and cannot sit still.   The corrections officer that was at the end of the counter walks over to Brian. Brian's head is moving back and forth, Brian tilts his head back.   The other corrections officer comes back in view of the camera.

90.     On April 25, 2022, at approximately 12:31 a.m., both corrections officers exit the view of the camera and return a few short seconds later.   They both lift Brian up from the wheelchair (Brian's body appears to be straight).   One corrections officer checks for a pulse and leaves the view of the camera.   The other corrections officer remains with Brian.

91.     On April 25, 2022, at approximately 12:34 a.m., a corrections officer comes in view of camera, walks over to Brian, and nudges his foot.

92.     On April 25, 2022, at approximately 12:34 a.m., Deputy Griffin arrives, and appears to use his police radio.

93.     Another corrections officer arrives, goes over to Brian, and then exits view of the camera.

94.     On April 25, 2022, at approximately 12:35 a.m., Deputy Griffin and the 3 corrections officers remove Brian from the wheelchair and place him on the floor; one corrections officer begins CPR.

95.     On April 25, 2022, at approximately 12:36 a.m., they administer an AED shock (2 or 3 times); they restart CPR.

96.     On April 25, 2022, at approximately 12:39 a.m., EMS arrive and take control of emergency CPR.

97.     On April 25, 2022, at approximately 12:55 a.m., EMS remove Brian's body from the facility.

98.     During his incarceration, Brian mostly vomited and/or sometimes spit-up over 100 times in a span of at least 34 hours, causing his death.

**V.     CLAIMS FOR RELIEF**

<u>**COUNT I**</u>
**42 U.S.C. § 1983 - 14th Amendment - Denial of Medical Care - Individual Liability (Morgan County Custodial Defendants, Advance Correctional Healthcare Defendants and Nurses)**

99.     At all relevant times, Plaintiff's decedent, Brian Downs, had a constitutionally protected right under the Fourteenth Amendment to the United States Constitution to receive needed care while in the MCDF, and to have his health monitored and his medical issues timely and properly assessed and treated.

100.    Jail Administrator Tim Megginson and Assistant Jail Administrator Trevor Prather acted under color of law.

101.    Defendants, CO Borman, CO Brown, CO Bunfill, CO Crews, CO Gill, CO Hart, CO Hayes, CO Hillis, CO Manley, and CO Sexton, acted under color of law.

102.    Defendants, Nurse Graham and NP Dambacher, acted under color of state law.   Each were private individuals acting under a contract with the County and/or Sheriff Carmody to perform a traditional and statutorily required governmental function.

103.    These defendants were deliberately indifferent to Brian's serious medical needs and thereby deprived Brian of his constitutional right to due process of law guaranteed by the Fourteenth Amendment to the Unites States Constitution.

104.    Brian suffered from both an objectively and subjectively substantial risk of serious harm while under the custody and care of these defendants, who responded to this risk in an objectively and subjectively unreasonable manner.

WHEREFORE, Plaintiff prays for judgment as noted below.

<u>**COUNT II**</u>
**42 U.S.C. § 1983 - 14th Amendment - Denial of Medical Care – *Monell Claim***
**(Morgan County and/or Sheriff Carmody)**

105.    The violation of Brian Downs' rights under the Fourteenth Amendment to the United States Constitution, Plaintiff's damages, and the conduct of the Morgan County Custodial and Medical Defendants and Advanced Correctional Healthcare Defendants, were directly and proximately caused by the actions and/or inactions of the Defendant Morgan County and/or Sheriff Carmody, which, with deliberate indifference:

a.    failed to ensure through proper training, supervision and discipline of corrections staff or termination of medical staff that corrections staff and medical staff complied with established policies, practices and procedures for addressing the serious medical needs of inmates at MCDF, such as Brian, who are undergoing detoxification from opioids;

b.    acquiesced or deliberately denied Brian emergency medical care while he was vomiting and spitting up blood for 34 hours, despite the

obvious need for medical care.

c.    failed to ensure through training, supervision and discipline of corrections staff and medical staff that corrections staff and medical staff adequately communicate and document an inmate's deteriorating medical health condition;

d.    failed to ensure, through training, supervision and discipline of corrections staff and medical staff, that corrections staff and medical staff properly respond to an inmate's deteriorating medical health condition;

e.    failed to contract for healthcare services in a manner that financial incentives would not affect reasonable medical judgment, and deter medical corrections staff or medical staff from calling on-call healthcare providers, requesting on-call providers to return to the facility after hours for medical emergencies, or for calling outside non-contract emergency services; and

f.    failed to provide or otherwise effectively manage a medication assistance treatment program for inmates at MCDF, such as Brian, who are undergoing detoxification from opioids.

WHEREFORE, Plaintiff prays for judgment as noted below.

## COUNT III
### 42 U.S.C. § 1983 - 14th Amendment - Denial of Medical Care – *Monell Claim*
### (Advanced Correctional Healthcare)

106.    The violation of Brian Downs' rights under the Fourteenth Amendment to

the United States Constitution, Plaintiff's damages, and the conduct of the individual

Morgan County Corrections and Medical Defendants and Individual Advanced

Correctional Healthcare Defendants was directly and proximately caused by the actions

and/or inactions of the Defendant Advanced Correctional, which, with deliberate

indifference:

a.   failed to ensure through proper training, supervision and discipline
     that the individual corrections staff and medical staff complied with
     established policies, practices and procedures for addressing the
     serious medical needs of inmates at MCDF, such as Brian, who are
     undergoing detoxification from opioids;

b.   acquiesced in the widespread practice and/or office policy at MCDF
     for corrections officers or medical staff to not contact on call and
     other medical providers or call for emergency medical services on
     behalf of an inmate experiencing an obvious medical emergency;

c.   failed to adequately monitor the deteriorating medical health of
     inmates;

d.   failed to ensure, through training, supervision and discipline of
     corrections staff or medical staff, that corrections staff and medical
     staff adequately communicate and document an inmate's
     deteriorating medical health condition;

e.   failed to ensure through training, supervision and discipline of
     corrections staff and medical staff, that corrections staff and medical

staff properly respond to an inmate's deteriorating medical health condition;

f.   failed to contract for healthcare services in a manner that financial incentives would not affect reasonable medical judgment, and deter medical corrections staff or medical staff from calling on-call and other healthcare providers, requesting on-call and other medical providers to return to the facility after hours for medical emergencies, or for calling outside non-contract emergency services; and

g.   failed to train corrections or medical staff or provide staff or otherwise effectively manage a medicated assistance treatment program for inmates at MCDF, such as Brian, who are undergoing detoxification from opioids.

WHEREFORE, Plaintiff prays for judgment as noted below.

## COUNT IV
### State Law Claim – Survival – Willful & Wanton Conduct
**(Morgan County/Sheriff Carmody, Individual Morgan County Custodial Defendants)**

107.   Plaintiff, Julie Downs, is the Administrator or the Estate of Brian Downs, and brings this action pursuant to the Survival Act, 755 ILCS 5/27-6.

108.   Defendants Morgan County and/or Defendant Sheriff Carmody, acting through its employees, including but not limited to: Jail Administrator Tim Megginson, Assistant Jail Administrator Trevor Prather, Defendants CO Borman, CO Brown, CO Bunfill, CO Crews, CO Gill, CO Hart, CO Hayes, CO Hillis, CO Manley, and CO Sexton, owed a duty to provide access to competent medical care to treat the serious medical

needs of pre-trial detainees housed in the MCDF, including Brian.

109.    The Morgan County Custodial Defendants breached the aforesaid duty in the following manner:

a.    willfully and wantonly failed to monitor or assess Brian in order to address his withdrawal symptoms while detoxifying;

b.    willfully and wantonly failed to monitor Brian's intake of nutrition and hydration while he was detoxifying;

c.    willfully and wantonly failed to communicate and document Brian's deteriorating medical condition and the severity of his withdrawal symptoms while detoxifying;

d.    willfully and wantonly failed to properly respond to Brian's deteriorating medical condition in light of the increasing severity of his withdrawal symptoms while detoxifying;

e.    willfully and wantonly failed to properly communicate to on-site medical providers or contact on-call, off-site Advanced Correctional Healthcare providers to report Brian's deteriorating medical condition and the increasing severity of his withdrawal symptoms while detoxifying;

f.    willfully and wantonly failed to recognize that the severity of Brian's withdrawal symptoms while detoxifying from opioids could not be properly managed in the MCDF;

g.    willfully and wantonly failed to recognize that the severity of Brian's

withdrawal symptoms while detoxifying from opioids should be managed in a hospital setting by a qualified medical provider; and

h.    willfully and wantonly failed to call emergency transport or transfer Brian to a hospital to receive timely and necessary treatment as he became critically ill while detoxifying from opioids.

110.   As a direct and proximate result of one or more of the aforesaid wilfull or wanton acts or omissions, Brian died on April 25, 2022.

111.   As a direct and proximate result of the aforesaid, Brian suffered injuries of a personal and pecuniary nature, including, but not limited to pain and suffering, and physical and emotional trauma, all of which continued until his death and contributed to cause his death on April 25, 2022, and had he survived he would have been entitled to bring an action for the damages, and said action has survived him pursuant to the Illinois Survival Act.

WHEREFORE, Plaintiff prays for judgment as noted below.

## COUNT V
### State Law Claim – Wrongful Death – Wilful & Wanton Conduct
**(Morgan County/Sheriff Carmody Individual Morgan County Custodial Defendants)**

112.   Plaintiff, Julie Downs, is the Administrator or the Estate of Brian Downs, and brings this action on behalf of Brian Downs' next of kin pursuant to the Wrongful Death Act, 740 ILCS 180/1.

113.   Defendants Morgan County and/or Defendant Sheriff Carmody, acting through its employees, including but not limited to: Jail Administrator Tim Megginson, Assistant Jail Administrator Trevor Prather, Defendants CO Borman, CO Brown, CO

Bunfill, CO Crews, CO Gill, CO Hart, CO Hayes, CO Hillis, CO Manley, and CO Sexton; owed a duty to provide access to competent medical care to treat the serious medical needs of pre-trial detainees housed in the MCDF, including Brian.

114.    The Morgan County Custodial Defendants breached the aforesaid duty, in the following manner:

   a. willfully and wantonly failed to monitor or assess Brian in order to address his withdrawal symptoms while detoxifying;

   b. willfully and wantonly failed to monitor Brian's intake of nutrition and hydration while his was detoxifying;

   c. willfully and wantonly failed to communicate and document Brian's deteriorating medical condition and the severity of his withdrawal symptoms while detoxifying;

   d. willfully and wantonly failed to properly respond to Brian's deteriorating medical condition in light of the increasing severity of his withdrawal symptoms while detoxifying;

   e. willfully and wantonly failed to properly communicate to on-site medical providers or contact on-call, off-site Advanced Correctional Healthcare providers to report Brian's deteriorating medical condition and the increasing severity of his withdrawal symptoms while detoxifying;

   f. willfully and wantonly failed to recognize that the severity of Brian's withdrawal symptoms while detoxifying from opioids could not be

properly managed in the MCDF;

g.    willfully and wantonly failed to recognize that the severity of Brian's withdrawal symptoms while detoxifying from opioids should be managed in a hospital setting by a qualified medical provider; and

h.    willfully and wantonly failed to call emergency transport or transfer Brian to a hospital to receive timely and necessary treatment as he became critically ill while detoxifying from opioids.

115.    As a direct and proximate result of one or more of the aforesaid wilful or wanton acts or omissions, Brian died on April 25, 2022.

116.    As a direct and proximate result of Brian Downs' death, his next of kin have lost and will continue to lose a substantial pecuniary support, consortium, society companionship, and the love and affection of their brother, and are entitled to recovery under this Act.

WHEREFORE, Plaintiff prays for judgment as noted below.

<u>**COUNT VI**</u>
**State Law Claim – Survival   – Institutional Negligence**
**(Advanced Correctional Healthcare)**

117.    Plaintiff, Julie Downs, is the Administrator or the Estate of Brian Downs, and brings this action pursuant to the Survival Act, 755 ILCS 5/27-6.

118.    At all relevant times, Advanced Correctional Healthcare had an independent duty and/or voluntary and jointly assumed the non-delegable duty of the Morgan County and the Morgan County Sheriff to provide medical care to inmates of the MCDF, including:

a.  a duty to manage and provide on-site and telemedicine healthcare services for the inmates/detainees at the MCDF;

b.  a duty to provide sufficient staffing of qualified medical practitioners, and appropriate supervision of medical staff, to effectively manage and operate a medicated assisted treatment program;

c.  a duty to follow the medical policies and procedures set forth by Morgan County (which Advanced Correctional Healthcare determined to be written in accordance with current National Standards of Correctional Health); the standards set forth in the County Jail Act, 730 ILCS 125/0.01, et seq.; and the regulations set forth in 20 Ill. Admin. Code 701.90.

d.  a duty to provide medical and support staff trained in accordance with NCCHC (National Commission on Correctional Healthcare).

119.  At all relevant times, Advanced Correctional Healthcare had an independent duty and/or voluntary and jointly assumed the non-delegable duty of the Morgan County and the Morgan County Sheriff to provide administrative services to ensure proper medical care to inmates of MCDF, including:

a.  a duty to provide quarterly reports to the Morgan County Sheriff or his designee concerning the overall health care services program and the general health of the persons committed to the jail, including: the number of medical requests received; the number of medical visits; the number of unique inmates seen; the longest length of time

between a request and a visit; the number of off-site visits to specialists; and the number of off-site emergency room visits;

b.    a duty to meet quarterly with the Morgan County Sheriff or his designee concerning procedures within the jail and any proposed changes in health-related procedures;

c.    a duty to establish a training program for the Morgan County jailers.

120.    Defendant Advanced Correctional Healthcare breached one or more of the aforesaid duties in one or more of the following manners:

a.    negligently and carelessly provided and managed the healthcare delivery system provided to the MCDF in that it incentivized nurses to act outside the scope of their qualifications;

b.    negligently and carelessly managed the healthcare delivery system provided to the MCDF in that it disincentivized nursing staff from objectively communicating an inmate's condition to on-call medical providers;

c.    negligently and carelessly managed the healthcare delivery system provided to MCDF in that it disincentivized nursing staff from recommending or requesting that the on-call medical provider go to the MCDF to provide after hour medical services;

d.    negligently and carelessly managed the healthcare delivery system provided to the MCDF in that it disincentivized nursing staff from recommending or requesting that an inmate be sent to the

emergency room;

e.    negligently and carelessly managed a medication assistance treatment and failed to staff such program with sufficient, properly trained, and qualified medical practitioners;

f.    negligently failed to submit quarterly written healthcare reports or meet with the Morgan County Sheriff to evaluate or discuss improvements or changes in health-related procedures; and

g.    negligently and carelessly failed to establish a training program for the County Deputies and Jailers.

121.    The injuries and death suffered by Brian were proximately caused by the negligence, breach of duty of the standard of care, neglect, default, and /or willful and wanton conduct of the Defendant Advanced Correctional Healthcare as described above.

122.    As a direct and proximate result of the aforesaid, Brian suffered injuries of a personal and pecuniary nature, including, but not limited to pain and suffering, and physical and emotional trauma, all of which continued until his death and contributed to cause his death on April 25, 2022, and had he survived he would have been entitled to bring an action for the damages and said action has survived him pursuant to the Illinois Survival Act.

WHEREFORE, Plaintiff prays for judgment as noted below.

## COUNT VII
## State Law Claim – Wrongful Death   – Institutional Negligence
### (Advanced Correctional Healthcare)

123.    Plaintiff, Julie Downs, is the Administrator or the Estate of Brian Downs, and

brings this action on behalf of Brian Downs' next of kin pursuant to the Wrongful Death Act, 740 ILCS 180/1.

124.   Advanced Correctional Healthcare had an independent duty and/or voluntary and jointly assumed the non-delegable duty of the Morgan County and the Morgan County Sheriff to provide medical care to inmates of the MCDF, including:

   a.   a duty to manage and provide on-site and telemedicine healthcare services for the inmates/detainees at the MCDF;

   b.   a duty to provide sufficient staffing of qualified medical practitioners, and appropriate supervision of medical staff, to effectively manage and operate a medication assisted treatment program;

   c.   a duty to follow the medical policies and procedures set forth by Morgan County (which Advanced Correctional Healthcare determined to be written in accordance with current National Standards of Correctional Health); the standards set forth in the County Jail Act, 730 ILCS 125/0.01, et seq.; and the regulations set forth in 20 Ill. Admin. Code 701.90; and

   d.   a duty to provide medical and support staff trained in accordance with NCCHC (National Commission on Correctional Healthcare).

125.   At all relevant times, Advanced Correctional Healthcare had an independent duty and/or voluntary and jointly assumed the non-delegable duty of the Morgan County and the Morgan County Sheriff, to provide administrative services to ensure proper medical care to inmates of MCDF, including:

a.    a duty to provide quarterly reports to the Morgan County Sheriff or his designee concerning the overall health care services program and the general health of the persons committed to the jail, including: the number of medical requests received; the number of medical visits; the number of unique inmates seen; the longest length of time between a request and a visit; the number of off-site visits to specialists; and the number of off-site emergency room visits;

b.     a duty to meet quarterly with the Morgan County Sheriff or his designee concerning procedures within the Jail and any proposed changes in health-related procedures;

c.    a duty to establish a training program for the Morgan County jailers.

126.    Defendant Advanced Correctional Healthcare breached one or more of the aforesaid duties in one or more of the following manners:

a.    negligently and carelessly provided and managed the healthcare delivery system provided to the MCDF in that it incentivized nurses to act outside the scope of their qualifications;

b.    negligently and carelessly managed the healthcare delivery system provided to the MCDF in that it disincentivized nursing staff from objectively communicating an inmate's condition to on-call medical providers;

c.    negligently and carelessly managed the healthcare delivery system provided to MCDF in that it disincentivized nursing staff from

recommending or requesting that the on-call medical provider go to the MCDF to provide after hour medical services;

d.    negligently and carelessly managed the healthcare delivery system provided to the MCDF in that it disincentivized nursing staff from recommending or requesting that an inmate be sent to the emergency room;

e.    negligently and carelessly managed a medication assistance treatment and failed to staff such program, with sufficient, properly trained, and qualified medical practitioners;

f.    negligently failed to submit quarterly written healthcare reports or meet with the Morgan County Sheriff to evaluate or discuss improvements or changes in health-related procedures; and

g.    negligently and carelessly failed to establish a training program for the County Deputies and Jailers.

127.    The injuries and death suffered by Brian were proximately caused by the negligence, breach of duty of the standard of care, neglect, default, and/or willful and wanton conduct of the Defendants as described above.

128.    As a direct and proximate result of Brian's death, his next of kin have lost and will continue to lose a substantial pecuniary support, consortium, society companionship, and the love and affection of their brother, and are entitled to recovery under this Act.

WHEREFORE, Plaintiff prays for judgment as noted below.

<u>**COUNT VIII**</u>
**State Law Claim – Survival   – Medical Malpractice**
**(Advanced Correctional Healthcare and the Individual Medical Defendants)**

129.    Plaintiff, Julie Downs, is the Administrator or the Estate of Brian Downs, and brings this action pursuant to the Survival Act, 755 ILCS 5/27-6.

130.    Plaintiff attached hereto an affidavit in compliance with 735 ILCS 5/2-622(a)(2).

131.    Defendant Advanced Correctional Healthcare, acting through its employees, NP Dambacher, identified above, and NP Dambacher, individually, and Morgan County employee RN Graham, owed a duty to exercise reasonable care according to the conditions known to them or that, through reasonable care should have been known to them, in accordance with standards of care in the community of nurses, for NP Dambacher and RN Graham.

132.    The foregoing Medical Defendants breached the aforesaid duty to Brian Downs to exercise reasonable care according to the conditions known to them or that, through reasonable care, should have been known to them, in accordance with the standards of their respective professional communities.

133.    Defendant NP Dambacher was negligent and deviated from the standard of care in one or more of the following ways:

a.    negligently and carelessly failed to adequately review Brian's history in order to properly assess the severity and duration of his withdrawal symptoms during his detoxification;

b.    negligently and carelessly failed to conduct any follow-up to ensure

that Brian was receiving adequate care after having been told that Brian was actively withdrawing during opioid detoxification;

c. negligently and carelessly failed to personally assess or provide for a personal assessment by a qualified physician after Brian's medical condition worsened;

d. negligently and carelessly failed to personally assess Brian's medical condition after receiving notice of his serious medical needs;

e. negligently and carelessly failed to instruct the nursing staff on-site at the MCDF to seek emergency medical attention to treat Brian's serious medical needs;

f. negligently and carelessly failed to instruct the nursing staff to transport Brian to the hospital;

g. negligently and carelessly failed to recognize that Brian's deteriorating medical condition, as evidenced by the severity of his withdrawal symptoms while detoxifying from opioids, could not be properly managed outside a hospital;

h. negligently and carelessly failed to properly call for emergency transport or obtain other emergency care for Brian in order for him to receive timely and necessary treatment as he became critically ill while detoxifying from opioids.

i. failed to adequately document in the medical records or otherwise communicate to on call physicians, other medical professionals, or

on-site nursing staff the nature and extent of Brian's serious medical needs; and

j.      failed to adequately monitor or document Brian's medical condition after he was placed in the medical holding cell, including monitoring his vital signs, loss of hydration, and electrolytes, due to vomiting.

134.    Defendant RN Graham was negligent and deviated from the standard of care in one or more of the following ways

a.      negligently and carelessly failed to adequately document in the medical records or otherwise communicate to on call physicians or on call nursing staff the nature and extent of Brian's serious medical needs;

b.      negligently and carelessly failed to properly screen Brian in order to anticipate the serious medical needs he would experience while detoxifying from opioids;

c.      negligently and carelessly failed to properly assess Brian to evaluate the severity of his withdrawal symptoms while detoxifying from opioids;

d.      negligently and carelessly failed to monitor Brian in order to treat his withdrawal symptoms while detoxifying from opioids;

e.      negligently and carelessly failed to monitor Brian's intake of nutrition and hydration while he was detoxifying from opioids;

f.      negligently and carelessly failed to communicate and document

Brian's deteriorating medical condition and the severity of his withdrawal symptoms while detoxifying from opioids;

g.     negligently and carelessly failed to properly respond to Brian's deteriorating medical condition in light of the increasing severity of his withdrawal symptoms while detoxifying from opioids;

h.     negligently and carelessly failed to properly communicate to Advanced Correctional Healthcare medical providers or otherwise arrange for appropriate medical care to report Brian's deteriorating medical condition and the increasing severity of his withdrawal symptoms while detoxifying from opioids;

i.     negligently and carelessly failed to recognize that Brian's deteriorating medical condition, as evidenced by the increasing severity of his withdrawal symptoms while detoxifying from opioids, could not be properly managed outside of a hospital; and

j.     negligently and carelessly failed to properly call for emergency transport or obtain other emergency care for Brian in order for him to receive timely and necessary treatment as he became critically ill while detoxifying from opioids.

135.   The injuries and death suffered by Brian were proximately caused by the negligence, breach of duty of the standard of care, neglect, default, and /or willful and wanton conduct of the Defendants as described above.

136.   As a direct and proximate result of the aforesaid, Brian suffered injuries of

a personal and pecuniary nature, including, but not limited to, pain and suffering, and physical and emotional trauma, all of which continued until his death and contributed to cause his death on April 25, 2022, and had he survived he would have been entitled to bring an action for the damages and said action has survived him pursuant to the Illinois Survival Act.

WHEREFORE, Plaintiff prays for judgment as noted below.

**COUNT IX**
**State Law Claim – Wrongful Death   – Healing Art Malpractice**
**(Advanced Correctional Healthcare and the Individual Medical Defendant)**

137.    Plaintiff, Julie Downs, is the Administrator or the Estate of Brian Downs, and brings this action on behalf of Brian Downs' next of kin pursuant to the Wrongful Death Act, 740 ILCS 180/1.

138.    Plaintiff attached hereto an affidavit in compliance with 735 ILCS 5/2-622(a)(2).

139.    Defendant Advanced Correctional Healthcare, acting through its employees, NP Dambacher, identified above, and NP Dambacher, individually, and Morgan County employee RN Graham, owed a duty to exercise reasonable care according to the conditions known to them or that, through reasonable care should have been known to them, in accordance with standards of care in the community of nurses for NP Dambacher and RN Graham.

140.    The foregoing Medical Defendants breached the aforesaid duty to Brian Downs to exercise reasonable care according to the conditions known to them or that, through reasonable care, should have been known to them, in accordance with the

standards of care in their respective professional communities.

141.    Defendant NP Dambacher was negligent and deviated from the standard of care in one or more of the following ways.

    a.    negligently and carelessly failed to adequately review Brian's history in order to properly assess the severity and duration of his withdrawal symptoms during his detoxification;

    b.    negligently and carelessly failed to conduct any follow-up to ensure that Brian was receiving adequate care after having been told that Brian was actively withdrawing during opioid detoxification;

    c.    negligently and carelessly failed to personally assess or provide for a personal assessment by a qualified physician after Brian's medical condition worsened;

    d.    negligently and carelessly failed to personally assess Brian's medical condition after receiving notice of his serious medical needs;

    e.    negligently and carelessly failed to instruct the nursing staff on-site at the MCDF to seek emergency medical attention to treat Brian's serious medical needs; and

    f.    negligently and carelessly failed to instruct the nursing staff to transport Brian to the hospital.

    g.    negligently and carelessly negligently and carelessly failed to recognize that Brian's deteriorating medical condition, as evidenced by the severity of his withdrawal symptoms while detoxifying from

opioids, could not be properly managed outside a hospital; and

h.    negligently and carelessly failed to properly call for emergency transport or obtain other emergency care for Brian in order for him to receive timely and necessary treatment as he became critically ill while detoxifying from opioids.

i.    negligently and carelessly failed to adequately document in the medical records or otherwise communicate to on call physicians, other medical professionals, or on-site nursing staff the nature and extent of Brian's serious medical needs; and

j.    negligently and carelessly failed to adequately monitor or document Brian's medical condition after he was placed in the medical holding cell, including monitoring his vital signs, loss of hydration, and electrolytes due to vomiting.

142.    Defendant RN Graham was negligent and deviated from the standard of care in one or more of the following ways.

a.    negligently and carelessly failed to adequately document in the medical records or otherwise communicate to on call physicians or on call nursing staff the nature and extent of Brian's serious medical needs;

b.    negligently and carelessly failed to adequately monitor or document Brian's medical condition which necessitated being placed in a medical cell, including monitoring his vital signs, because of loss of

hydration and electrolytes due to vomiting;

c.     negligently and carelessly failed to properly screen Brian in order to anticipate the serious medical needs he would experience while detoxifying from opioids;

d.     negligently and carelessly failed to properly assess Brian to evaluate the severity of his withdrawal symptoms while detoxifying from opioids;

e.     negligently and carelessly failed to monitor Brian in order to treat his withdrawal symptoms while detoxifying from opioids;

f.     negligently and carelessly failed to monitor Brian's intake of nutrition and hydration while he was detoxifying from opioids;

g.     negligently and carelessly failed to communicate and document Brian's deteriorating medical condition and the severity of his withdrawal symptoms while detoxifying from opioids;

h.     negligently and carelessly failed to properly respond to Brian's deteriorating medical condition in light of the increasing severity of his withdrawal symptoms while detoxifying from opioids;

i.     negligently and carelessly failed to properly communicate to Advanced Correctional Healthcare medical providers or otherwise arrange for appropriate medical care to report Brian's deteriorating medical condition and the increasing severity of his withdrawal symptoms while detoxifying from opioids;

    j.    negligently and carelessly failed to recognize that Brian's deteriorating medical condition, as evidenced by the increasing severity of his withdrawal symptoms while detoxifying from opioids, could not be properly managed outside of a hospital; and

    k.    negligently and carelessly failed to properly call for emergency transport or obtain other emergency care for Brian in order for him to receive timely and necessary treatment as he became critically ill while detoxifying from opioids.

143.    The injuries and death suffered by Brian Downs were proximately caused by the negligence, breach of duty of the standard of care, neglect, default, and /or wilful and wanton conduct of the Defendants as described above.

144.    As a direct and proximate result of Brian Downs' death, his next of kin, have lost and will continue to lose a substantial pecuniary support, consortium, society companionship, and the love and affection of their son and brother, and are entitled to recovery under this Act.

WHEREFORE, Plaintiff prays for judgment as noted below.

### COUNT X
**State Law Claim – Survival   – Medical Malpractice**
**(Jacksonville Memorial Hospital and Helen D. Kwong, M.D.)**

145.    Plaintiff, Julie Downs, is the Administrator or the Estate of Brian Downs, and brings this action pursuant to the Survival Act, 755 ILCS 5/27-6.

146.    Plaintiff attached hereto an affidavit in compliance with 735 ILCS 5/2-622(a)(2).

147.    Defendant JMH, acting through its employees and Kwong, individually, owed a duty to exercise reasonable care according to the conditions known to them or that, through reasonable care should have been known to them, in accordance with standards of care in the community of medical providers, hospitals and doctors.

    a.    At all relevant times, and especially on April 22, 2022, JMH and Kwong had a duty to completely and effectively communicate with correctional officers that it was imperative that Plaintiff's decedent be immediately returned to the emergency department should his symptoms become worse, have increased confusion or persistent vomiting.

    b.    At all relevant times, JMH and Kwong had a duty to follow-up with the MCDF to monitor the progress of the Plaintiff's decedent's medical condition to ensure that he be immediately returned to the emergency department for medical care to address his serious medical condition.

    c.    At all relevant times, JMH and Kwong   had a duty to ensure that Brian was not discharged from JMH when it knew or should have known that Brian's serious medical needs could not be managed outside of a hospital setting.

148.    The foregoing Medical Defendants breached the aforesaid duty to Brian Downs to exercise reasonable care according to the conditions known to them or that, through reasonable care, should have been known to them, in accordance with the standards of their respective professional communities.

149.    Defendant Kwong was negligent and deviated from the standard of care in one or more of the following ways:

a.      negligently and carelessly failed to conduct any follow-up to ensure that Brian was receiving adequate care pursuant to the discharge instructions after having been told that Brian was actively withdrawing during opioid detoxification;

b.      negligently and carelessly failed to instruct the Morgan County Defendants to transport Brian to the hospital;

c.      negligently and carelessly failed to recognize that Brian's deteriorating medical condition, as evidenced by the severity of his withdrawal symptoms while detoxifying from opioids, could not be properly managed outside a hospital;

d.      failed to adequately document in the medical records or otherwise communicate to Defendant Morgan County, Defendant employees, and Defendant Graham the nature and extent of Brian's serious medical needs; and

e.      failed to adequately monitor or document Brian's medical condition following his discharge.

150.    Defendant JMH was negligent and deviated from the standard of care in one or more of the following ways through its employees:

a.      negligently and carelessly failed to adequately document in the medical records or otherwise communicate to physicians, nursing staff, and Morgan County and its employees, the nature and extent of Brian's serious medical needs and the urgency of his medical

condition to ensure his return to the hospital if his condition worsened;

b.     negligently and carelessly failed to properly assess Brian to evaluate the severity of his withdrawal symptoms while detoxifying from opioids;

c.     negligently and carelessly failed to monitor Brian in order to treat his withdrawal symptoms while detoxifying from opioids;

d.     negligently and carelessly allowed Brian to be discharged from JMH when it knew or should have known that Brian's serious medical needs could not be managed outside of a hospital setting; and

e.     negligently and carelessly failed to properly respond to Brian's deteriorating medical condition in light of the increasing severity of his withdrawal symptoms while detoxifying from opioids.

151.   The injuries and death suffered by Brian were proximately caused by the negligence, breach of duty of the standard of care, neglect, default, and /or willful and wanton conduct of the Defendants as described above.

152.   As a direct and proximate result of the aforesaid, Brian suffered injuries of a personal and pecuniary nature, including, but not limited to, pain and suffering, and physical and emotional trauma, all of which continued until his death and contributed to cause his death on April 25, 2022, and had he survived he would have been entitled to bring an action for the damages and said action has survived him pursuant to the Illinois Survival Act.

WHEREFORE, Plaintiff prays for judgment as noted below.

**COUNT XI**
**State Law Claim – Wrongful Death   – Healing Art Malpractice**
**(Jacksonville Memorial Hospital and Helen D. Kwong, M.D.)**

153.    Plaintiff, Julie Downs, is the Administrator or the Estate of Brian Downs, and brings this action on behalf of Brian Downs' next of kin pursuant to the Wrongful Death Act, 740 ILCS 180/1.

154.    Plaintiff attached hereto an affidavit in compliance with 735 ILCS 5/2-622(a)(2).

155.    Defendant JMH, acting through its employees and Kwong, individually, owed a duty to exercise reasonable care according to the conditions known to them or that, through reasonable care should have been known to them, in accordance with standards of care in the community of medical providers, hospitals and doctors.

  a.    At all relevant times, and especially on April 22, 2022, JMH and Kwong had a duty to completely and effectively communicate with correctional officers that it was imperative that Plaintiff's decedent be immediately returned to the emergency department should his symptoms become worse, have increased confusion or persistent vomiting.

  b.    At all relevant times, JMH and Kwong had a duty to follow-up with the MCDF to monitor the progress of the Plaintiff's decedent's medical condition to ensure that he be immediately returned to the emergency department for medical care to address his serious medical condition.

  c.    At all relevant times, JMH and Kwong had a duty to ensure that Brian was

not discharged from JMH when it knew or should have known that Brian's serious medical needs could not be managed outside of a hospital setting.

156.    The foregoing Medical Defendants breached the aforesaid duty to Brian Downs to exercise reasonable care according to the conditions known to them or that, through reasonable care, should have been known to them, in accordance with the standards of their respective professional communities.

157.    Defendant Kwong was negligent and deviated from the standard of care in one or more of the following ways:

   a.    negligently and carelessly failed to conduct any follow-up to ensure that Brian was receiving adequate care pursuant to the discharge instructions after having been told that Brian was actively withdrawing during opioid detoxification;

   b.    negligently and carelessly failed to instruct the Morgan County Defendants to transport Brian to the hospital;

   c.    negligently and carelessly failed to recognize that Brian's deteriorating medical condition, as evidenced by the severity of his withdrawal symptoms while detoxifying from opioids, could not be properly managed outside a hospital;

   d.    failed to adequately document in the medical records or otherwise communicate to Defendant Morgan County, Defendant employees, and Defendant Graham the nature and extent of Brian's serious medical needs; and

e.    failed to adequately monitor or document Brian's medical condition following his discharge.

158.    Defendant JMH was negligent and deviated from the standard of care in one or more of the following ways through its employees:

a.    negligently and carelessly failed to adequately document in the medical records or otherwise communicate to physicians, nursing staff, and Morgan County and its employees, the nature and extent of Brian's serious medical needs and the urgency of his medical condition to ensure his return to the hospital if his condition worsened;

b.    negligently and carelessly failed to properly assess Brian to evaluate the severity of his withdrawal symptoms while detoxifying from opioids;

c.    negligently and carelessly failed to monitor Brian in order to treat his withdrawal symptoms while detoxifying from opioids;

d.    negligently and carelessly allowed Brian to be discharged from JMH when it knew or should have known that Brian's serious medical needs could not be managed outside of a hospital setting; and

e.    negligently and carelessly failed to properly respond to Brian's deteriorating medical condition in light of the increasing severity of his withdrawal symptoms while detoxifying from opioids.

159.    The injuries and death suffered by Brian were proximately caused by the

negligence, breach of duty of the standard of care, neglect, default, and /or willful and wanton conduct of the Defendants as described above.

160.    As a direct and proximate result of Brian Downs' death, his next of kin, have lost and will continue to lose a substantial pecuniary support, consortium, society companionship, and the love and affection of their son and brother, and are entitled to recovery under this Act.

WHEREFORE, Plaintiff prays for judgment as noted below.

### COUNT XII
**State Law Claim – Respondeat Superior -**
**(Morgan County and/or Sheriff Carmody and Jail Administrator Megginson)**

161.    The Morgan County Corrections Defendants and RN Graham were employees and/or agents of Morgan County and Sheriff Carmody, were acting within the scope of his or her employment, and his or her acts or omissions are directly chargeable to his or her employer, the Defendant Morgan County and/or Defendant Sheriff Carmody under state law pursuant to *respondeat superior*.

162.    The Morgan County Defendant RN Graham was an agent or employees of Morgan County and Sheriff Carmody with respect to delivery of healthcare services to inmates of the MCDF, was acting within the scope of her agency or employment with Morgan County and Sheriff Carmody, and her acts or omissions are directly chargeable to her principal, the Defendant Morgan County and Defendant Sheriff Carmody under state law pursuant to *respondeat superior*.

WHEREFORE, Plaintiff prays for judgment as noted below.

## COUNT XIII
### State Law Claim – Respondeat Superior
### (Advanced Correctional Healthcare)

163.    The Advanced Correctional Healthcare Medical Defendant, NP Dambacher, was an employee or agent of Advanced Correctional Healthcare.    The individually named Advanced Correctional Healthcare Medical Defendant was acting within the scope of her employment or agency with Advanced Correctional Healthcare, and her acts or omissions are directly chargeable to her employer or principal, the Defendant Advanced Correctional Healthcare under state law pursuant to *respondeat superior*.

WHEREFORE, Plaintiff prays for judgment as noted below.

## COUNT XIV
### State Law Claim – Respondeat Superior
### (Jacksonville Memorial Hospital and Helen D. Kwong, M.D.)

164.    The JMH Medical Defendant, Kwong, was an employee or agent of JMH. The individually named JMH Medical Defendant was acting within the scope of her employment or agency with JMH, and her acts or omissions are directly chargeable to her employer or principal, the Defendant JMH under state law pursuant to *respondeat superior*.

WHEREFORE, Plaintiff prays for judgment as noted below.

## COUNT XV
### State Law Claim – Indemnification – 745 ILCS 10-9-102
### (Morgan County and/or Sheriff Carmody and Jail Administrator Megginson)

165.    Pursuant to §9-102 of the Local Government and Governmental Tort Immunities Act (the Act), a local public entity is directed to pay any tort judgment or

settlement for compensatory damages for which it or an employee acting within the scope of his employment is liable.   745 ILCS 10/9-102.

166.    Defendant Morgan County, Defendant Sheriff Carmody and Jail Administrator Megginson are local public entities as defined by the Act.   745 ILCS 10/1-106

167.    The Morgan County Custodial Defendants and RN Graham at all relevant times were "employees" of the Morgan County Sheriff as defined by the Act.   745 ILCS 10/1-102.

168.    Certain conduct of the individually named Morgan County Corrections Defendants and RN Graham, as described in the Complaint, were willful and wanton as defined in the Act. 745 ILCS 10-1-1-210.

169.    The Morgan County Custodial Defendants and RN Graham acted within the scope of their employment by Morgan County and Sheriff Carmody.

170.    Pursuant to the Act, Morgan County and/or Sheriff Carmody are directly liable for the conduct of the individually named Morgan County Corrections Defendants and RN Graham.

## DAMAGES

171.    The Estate of Brian Downs has sustained the following damages: funeral and burial expenses incurred as a result of decedent's death that have become a charge against his Estate or that were paid on his behalf; loss of prospective net estate accumulations; decedent's conscious pain and suffering and the inherent value of life; pre and post-judgment interest; and loss of earnings of Brian Downs from the date of his

death, less lost support of his survivors excluding contributions in kind with interest.

172.    Julie Downs, Brittany Downs, and Brandon Downs, next of kin of Brian Downs, has sustained the following damages: great mental pain, anguish, and suffering from the date of Brian Down's wrongful death and continuing for the remainder of his life; pre and post-judgment interest.

173.    Plaintiff is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988.

174.    Plaintiff is entitled to punitive damages

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff seeks judgment as follows:

A.    Compensatory damages from each of the defendants herein.

B.    Punitive damages against the individual defendants or Crossing Healthcare as an entity as allowed by law.

C.    Attorney's fees pursuant to 42 U.S.C. U.S.C. § 1988, and costs of litigation;

D.    Such further relief as the Court deems just and proper.

Respectfully submitted,

Julie Downs, as Administrator of the Estate of Brian Downs, deceased, Plaintiff,

By:    /s/    Richard D. Frazier

One of Her Attorneys

Richard D. Frazier (6193113)
CHERRY, FRAZIER & SABIN, LLP
Attorneys at Law
1 W. Old State Capitol Plaza, Ste 800
Springfield, IL 62701
Telephone: (217)753-4242 Fax: (217)753-4642
Email: frazier@springfieldlawfirm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JULIE DOWNS, as Administrator of the<br>Estate of BRIAN DOWNS, and on behalf of his Next<br>of Kin, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. |
| COUNTY OF MORGAN, MIKE CARMODY,<br>Morgan County Sheriff, TIM MEGGINSON,<br>Morgan County Jail Administrator, TREVOR<br>PRATHER, Morgan County Assistant Jail<br>Administrator, KURT BORMAN, COLTON BROWN,<br>DYLAN BUNFILL, K.W. CREWS,<br>J. GILL, L. HART, IAN HAYES, ADAM<br>HILLIS, AUSTEN MANLEY, and CLAYTON SEXTON,<br>Morgan County Corrections Officers, | ) ) ) ) ) ) ) ) ) ) | **JURY DEMANDED** |
| ADVANCED CORRECTIONAL HEALTHCARE,<br>INC., JESSICA YOUNG, CEO and as President<br>of Advanced Correctional Healthcare, Inc., and<br>KAREN FOWLER, as Health Services Administrator<br>of Advanced Correctional Healthcare, Inc.,<br>MARY DAMBACHER, NP, and DAWN R.<br>GRAHAM, RN, | ) ) ) ) ) ) ) ) | |
| THE PASSAVANT MEMORIAL AREA HOSPITAL<br>ASSOCIATION, d/b/a JACKSONVILLE MEMORIAL<br>HOSPITAL, HELEN D. KWONG, M.D | ) ) ) | |
| Defendants. | ) ) | |

## <u>AMENDED AFFIDAVIT IN COMPLIANCE WITH 735 ILCS 5/2-622(a)(2)</u>

I, Richard D. Frazier, having first been duly sworn on oath, state:

1.       I have consulted and reviewed the facts of the case with a health care

professional who I reasonably believe: (i) is knowledgeable in the relevant issues involved

in this particular action; (ii) practices or has practiced within the last 6 years or teaches or

has taught within the last 6 years in the same area of health care or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case.

2.    The reviewing healthcare professional has determined in a written report, after a review of the medical records and other relevant material involved in this particular action, that there is a reasonable and meritorious cause for filing such action as to Advanced Correctional Healthcare, Inc., and its agents and employees, Mary Dambacher, N.P., and Dawn Graham, RN, and Jacksonville Memorial Hospital and Helen D. Kwong, M.D.

3.    I have concluded on the basis of said healthcare professional's review and consultation that there is a reasonable and meritorious cause for filing this action against the medical professionals identified above.

4.    A Copy of said physician's written report is attached to this affidavit.


                        /s/ Richard D. Frazier

Subscribed and sworn to before me this 1st day of December, 2023

                        /s/ Michelle L. Tomlin
                        Notary Public, State of Illinois
                        My commission expires 08-26-2025

# ATTACHMENT

**Certificate of Merit**

**Requesting Entity**
Richard D. Frazier, Esq.
Cherry, Frazier & Sabin, LLP
One W. Old State Capitol Plaza, Ste 800
Springfield, IL 62701

**Physician Author**
Joel Blackburn, D.O.
Columbia, Missouri

**Joel M Blackburn, D.O. hereby certifies as follows:**

1. I, Dr. Joel Blackburn, am a licensed physician in the state of Missouri. I am board certified in Internal Medicine with a critical care focus. In addition, I have extensive experience in correctional medicine since 2003 when I began work for the Missouri Department of Corrections. I was employed by Correctional Medical Services as the assistant director of the medical department at Moberly Correctional Center. In 2004, I was asked by the Sheriff of the Boone County Detention Facility to improve their jail medical program. I was awarded the contract for the county jail and became the medical director of the facility supervising the medical and mental health department. As jail director, I drafted and instituted county jail policies, protocols, procedures, and guidelines. I was responsible for cost containment, and worked closely with local institutions, county attorney, and the public defender's office. I was engaged in this role until 2016 when I resigned. I have practiced emergency medicine since 2000. In my capacity as emergency physician, I often take care of patients sent to the emergency room from either the county jail, or the department of corrections. I functioned as the director of the emergency department at Capital Region Medical Center for two years. I have attached my curriculum vitae to this certification.

2. I have reviewed the records, documents, and pertinent facts presented to me, for and on behalf of Richard Frazier, Esq., regarding the case of Brian C. Downs, who is deceased. His death occurred at Morgan County Detention Facility where he was incarcerated from April 22, 2022, until his death on April 25, 2022. The following records reviewed were the autopsy report, medical records prepared by nurse Dawn Graham, emergency room medical records, various police reports, the contract between Morgan County Sheriff's Department and Advanced Correctional Healthcare, Inc., and a copy of the federal complaint to be filed in this matter. After reviewing the aforementioned material, it is my professional opinion that Advanced Correctional Healthcare, Inc., (ACH), individuals at ACH, nurse practitioner Mary Dambacher, and nurse Dawn Graham all caused or contributed to cause the death of Brian Downs. I feel there is sufficient information based upon the material I have reviewed to conclude that there is a reasonable and meritorious cause for filing a medical negligence claim against Advanced Correctional Healthcare, Inc. and its employees, Dambacher, and Graham. Downs was arrested on April 22, 2022, and transported to the Morgan County Detention Facility. Upon his arrival at the facility, it was learned that Mr. Downs had recently injected heroin, was a daily user of opioids, and suffered from Opioid Use Disorder. During the time of his incarceration and until his subsequent death, Brian had multiple bouts of vomiting including blood. Mr. Downs reportedly vomited over one hundred times during a thirty-four-hour period. Surprisingly, he was never evaluated by a physician nor received the appropriate monitoring of his vital signs and weight. There was never laboratory evaluation of his kidney function, electrolytes, or an abdominal x-ray, and he did not receive IV fluids and further testing as would appropriately been performed in the proper setting. He was experiencing delirium and his behavior was restless. Advanced Correctional Healthcare, Inc. and its employees failed to deliver standard of care. The facility did not follow the National Commission on Correctional Healthcare (NCCHC) for opioid detoxification. The NCCHC guidelines for opioid detoxification include screening of all inmates for potential withdrawal within 2 hours of entry into the facility and that all inmates who screen positive should have formal evaluation within 24 hours. (NCCHC, 2013). This was not accomplished. Also, all inmates with clinically significant withdrawal should be treated with effective medication. Mr. Downs' symptoms continued unbated; and therefore, he should have been referred out for further evaluation and higher level of care. Because he did not have proper medical care, he died. Responsibility for the

health and well-being of an inmate patient is a shared duty. Inmate patients are an at-risk population with multiple comorbidities and risk factors. When they have their personal liberties removed and they are incarcerated it is the responsibility of the county, the jail, correctional staff, contracted medical companies and those who care for those patients to assume responsibility of managing those risks and assuring they have proper medical evaluation and treatment. Incarcerated patients have a constitutional right to proper medical care. Therefore, in the case of Brian Downs, those rights were violated as he underwent withdrawal and suffered from an undiagnosed small bowel blockage. He could not seek a second medical opinion or proper medical care while incarcerated as I am sure he would have. It does not take a medical degree to determine this.  Therefore, Morgan County and Morgan County Detention Facility also bear responsibility for lack of proper medical supervision of those under their employment and those who took care of Brian Downs.

Proper medical care and supervision was contracted to Advanced Correctional Healthcare, Inc. who therefore bears responsibility for Brian Downs' death as the entity which was contracted for medical care at the detention facility. Advanced Correctional Healthcare, Inc. employs the medical staff and is responsible for maintaining standards in accordance with the standards set forth by the NCCHC. The policies, protocols and procedures of the jail and maintaining proper jail standards is the responsibility of the facilities healthcare professionals. Mary Dambacher, the primary employee of Advanced Correctional Healthcare, Inc., was primarily responsible for Mr. Downs' medical care. She did not provide appropriate medical care to Mr. Downs during his incarceration as she should have as set forth above. She never personally examined Mr. Downs, nor did she conduct any follow up to ensure that he was receiving appropriate medical care. She only provided medical advice concerning the medical care of Mr. Downs on two occasions during his 3-days of incarceration. Her medical care of Mr. Downs did not meet standard of care.

Registered Nurse Dawn Graham's care of Mr. Downs also fell below the standard of care. She physically saw Mr. Downs on only two occasions during his three days of incarceration. Both Dambacher and Graham should have ensured that proper vital signs, weight, hydration, and nutrition of the patient was routinely performed during Mr. Downs' opioid withdrawal. If symptoms were not controlled or improving, he should have been seen by a competent medical provider.  They have the duty to administer orders given verbally or written by the physicians, carry out guidelines and protocols accurately and safely, and to advocate for patient health and safety. Neither of these individuals performed routine vital signs nor worked diligently to control Mr. Downs' symptoms. They should have sent the patient to the emergency department for evaluation and treatment. As a result of their negligence and indifference, and per the autopsy report, Brian Downs suffered and died from a surgical problem. He died from small bowel obstruction secondary to small bowel intussusception. This is a surgical emergency. He became septic, dehydrated, and his symptoms exacerbated by his opioid withdrawal. This is extremely negligent and shows deliberate indifference to the patient's uncontrolled symptoms and condition. Advanced Correctional Healthcare, Inc., its employees nurse practitioner Dambacher, and nurse Graham were a proximate cause, and their negligence and indifference caused and contributed to cause Mr. Downs' death.

3.   In addition, Jacksonville Memorial Hospital and physician Helen D. Kwong, MD., had a duty to advocate for the care of Mr. Brian Downs. He was not "Fit For Confinement," and his condition had not been stabilized prior to discharge. Therefore, their actions were negligent and contributed to the patient's decline and death.

4. My opinions are expressed with a reasonable degree of medical certainty.

5. I have experience and/or practice in the same or similar specialty as the defendants.

6. My opinions are formulated upon the assumption that I have been provided any and all relevant documentation, and that said documents are accurate. Therefore, my opinions may be revised based upon additional or new information, and documentation.

*Joel Blackburn*
Joel Blackburn, D.O.

 12/1/2023 
Date

References: National Commission on Correctional Healthcare. (2013, April 18). Opioid Detoxification Guideline. https://www.ncchc.org/opioid-detoxification-guideline